UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                          :

UNITED STATES OF AMERICA,          :

   -against-                                  :        1: (S1) 12 Cr. 196 (PAC)

MICHAEL BALBOA,                  :        OPINION AND ORDER

           Defendant.                  :

-------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Michael Balboa ("Defendant") was previously tried for allegedly engaging in a scheme to falsely inflate the value of certain securities held by the hedge fund Millennium Global Emerging Credit Fund ("Millennium Global"), where he worked as a portfolio manager. During the jury trial, Defendant introduced (1) an October 2010 recording of a telephone call between Gilles DeCharsonville and Mark Astley (the "telephone call") and (2) evidence that Defendant allegedly marked down the price of other securities held by Millennium Global (the "markdown" evidence). The Government now seeks to preclude Defendant from introducing this evidence at the retrial, which is scheduled to begin on December 2, 2013. The Government's motion to exclude portions of the telephone call is GRANTED and the Government's motion to exclude the "markdown" evidence is DENIED.

## BACKGROUND

As of October 2007, Millennium Global primarily consisted of two feeder funds that invested substantially all of their capital in Millennium Global Emerging Credit Master Fund, Ltd. (the "Fund"). Superseding Indictment, ¶ 2. The Fund's holdings included payment-adjusted warrants issued by the Government of Nigeria (the "Nigerian Warrants"), which were based on the price of oil. *Id.* ¶ 16.

The Fund used an independent valuation agent (the "IVA") to determine the overall value of the Fund on a monthly basis (the "Net Asset Value"). *Id*. ¶¶ 7-8. The IVA used market prices for the Fund's securities that were current and mark-to-market quotes obtained from outside, independent parties for the Fund's securities that were illiquid and non-exchange traded, like the Nigerian Warrants. *Id.* ¶ 8. Millennium Global Investments Limited ("MGIL") served as the Investment Manager for the Fund, *id.* ¶ 5, and used the IVA's price determinations in advising investors about the Fund's Net Asset Value. *Id.* ¶ 9.

The Government alleges that from January 2008 through October 2008, Defendant engaged in a scheme to artificially inflate the value of the Nigerian Warrants. *Id*. ¶¶ 12, 18. In furtherance of his scheme, Defendant provided the IVA with the names of two co-conspirators who could "independently" mark the illiquid securities. *Id.* ¶ 13. According to the Government, these co-conspirators overvalued prices based on inflated marks provided to them by Defendant. *Id.* The Government further alleges that, from late 2010 through March 2011, Defendant caused a co-conspirator to communicate certain false and materially misleading information to MGIL, among others, to prevent detection of the fraudulent scheme. *Id*. ¶ 15.

At trial, Defense counsel introduced an October 2010 telephone call between Gilles DeCharsonville ("DeCharsonville"), Defendant's broker and an alleged co-conspirator, and Mark Astley, the London-based CEO of MGIL. In 2010, MGIL conducted an inquiry into valuation issues relating to the Fund and Defendant provided MGIL a written justification for the pricing of certain securities in the Fund, including the Nigerian Warrants. *See* Government's Motion to Exclude Certain Portions of a Recorded Telephone Call ("Gov't's Mot."), Ex. 2. According to the Government, Defendant provided DeCharsonville with this document to ensure that their stories were consistent. *See id.*, Ex. 3. On October 25, 2010, Astley called

DeCharsonville to discuss the prices he provided for the Nigerian Warrants. *See id.*, Ex. 1. During the conversation, Astley said:

> The question is, though, or one of the issues is what evidence is there that the [Nigerian] warrant holders had any rights to the collateral, because it does not say that in any of the documentation that I'm aware of. And you're absolutely right, people did make this assumption or some people made this assumption that this collateral was due to the holders but what hard evidence is there that that was indeed the case, as opposed to pure speculation?

*Id.*, Ex. 1 at 8, 254-61. Defense counsel used this statement made in 2010 to argue that others besides Defendant believed in 2008 that collateral existed for the Nigerian Warrants. The Government claims that Astley's statements are inadmissible hearsay and therefore should be excluded from evidence at Defendant's retrial.

During the trial, defense counsel also introduced evidence concerning Defendant's purported good-faith price "markdowns" of other securities within the Fund. The evidence primarily consisted of recorded phone calls where Defendant instructed DeCharsonville to lower the price of certain securities other than the Nigerian Warrants in 2008. The Government asserts this Court should exclude "markdown" evidence at the retrial because the evidence is irrelevant and based on unsupported factual assumptions.

## DISCUSSION

### I. Legal Standard

"The purpose of motions *in limine* is to allow a court to rule on the admissibility of potential evidence in advance of trial." *Romanelli v. Long Island R.R. Co.*, 898 F. Supp. 2d 626, 629 (S.D.N.Y. 2012); *see Luce v. United States*, 469 U.S. 38, 41 n.2 (1984). On a motion *in limine*, a court will exclude evidence only if it is "clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006).

## II. Portions of the Telephone Call Between DeCharsonville and Astley

Hearsay is defined as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." *See* Fed. R. Evid. 801(c). "[A] statement offered to show its effect on the listener is not hearsay." *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013); *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) ("[I]t is well established . . . that statements offered for their effect on the listener are non-hearsay." (internal quotations and citations omitted)). Here, Defendant asserts that the telephone call between Astley and DeCharsonville is relevant to show its effect on DeCharsonville. According to Defendant, "[t]he fact that DeCharsonville . . . heard Astley . . . legitimize his understanding of the collateral account directly undercuts the Government's allegation that he conspired thereafter with Mr. Balboa to commit fraud by concealing their prior inflated valuations." Defendant's Opposition to the Government's *In Limine* Motions ("Def.'s Opp'n") at 18.

Defendant's use of the telephone call at the prior trial undermines his own argument. During summations, Defendant's counsel stated that, "not only did [Defendant] believe that other warrant holders would get excess [collateral], others believed it too." Trial Tr. at 1865:23-1866:1. Counsel then played the recording and summarized the call as "discussing the collateral that would be for this warrant." *Id.* at 1866:13-15. Referring to Astley, not DeCharsonville, counsel then stated: "He thinks it goes to the warrant holders. This is the sum and substance." *Id.* at 1866:18-19. Rather than using the telephone call to establish that "there [was] no meeting of the minds," *see* Def.'s Opp'n at 19, Defense counsel used the conversation to demonstrate that others believed a collateral account supported the prior valuations of the Nigerian Warrants. Defendant cannot now claim that the recordings contain a statement offered to show the effect on the listener.

4

The Court grants the Government's motion to exclude Astley's comments, made in the transcript of the October 25, 2010 telephone call, appearing at page 8, 244-262.

## III. "Markdown" Evidence Related to Other Securities

In general, "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990); *see United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999); *see also United States v. Nekritin*, No. 10-CR-491, 2011 WL 2462744, at *5 (E.D.N.Y. June 17, 2011) ("Evidence that a defendant charged with fraud engaged in other, non-fraudulent activity is generally irrelevant."). Evidence of a defendant's past "good acts" is only relevant where "a defendant is alleged to have 'always' or 'continually' committed 'bad acts' or where the evidence of 'good acts' would undermine the underlying theory of a criminal prosecution." *United States v. Damti*, 109 Fed. Appx. 454, 455-56 (2d Cir. 2004) (quoting *Scarpa*, 913 F.2d at 1011) (summary order). Here, any evidence that Defendant marked down the value of other securities in the Fund might demonstrate that he lacked the incentive to artificially inflate the value of the Nigerian Warrants. Specifically, "markdown" evidence could cause a jury to question the Government's proposed motive: an increase in profits. *See* Superseding Indictment, ¶ 6 (describing Defendant's pay as "based, in part, on the Hedge Fund's performance"). If Defendant believed that he was acting to decrease the Net Asset Value overall, then a jury might find that he lacked motive to commit securities fraud. On the other hand, simply saying "take last month's quote of 95 for the stock and make it 93 this month" does not mean that the mark given was *bona fide*.

The "markdown" evidence is only relevant if Defendant demonstrates the following: (1) that the prices he conveyed to DeCharsonville were actually lower than the fair market prices of

5

the securities; (2) that he knew this at the time he discussed the prices with DeCharsonville; (3) that he believed the prices would negatively impact the valuation of the Fund as a whole; and (4) that the markdowns took place during the time period when any alleged overvaluation occurred. As a result, this Court holds that the "markdown" evidence may be admissible but only if Defendant provides evidence supporting these four underlying assumptions. *See United States v. Reyes*, No. S 83 Cr. 657, 1986 WL 8068, at *2 (S.D.N.Y. July 14, 1986) (permitting a party to elicit evidence during trial "subject to connection" to the conspiracy charged); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . misleading the jury . . . ."). If Defendant is unable to do so, this Court will strike the "markdown" evidence from the record and the jury will be instructed to disregard it entirely.

## CONCLUSION

Accordingly, this Court GRANTS the Government's motion to exclude certain portions of the telephone call and DENIES the Government's motion to exclude "markdown" evidence, conditional upon the introduction of evidence to establish the necessary factual basis described above.

Dated: New York, New York
November 27, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge